[Cite as *Detrick v. Preece*, 2013-Ohio-2499.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### LOGAN COUNTY

LINDSAY DETRICK,

    PETITIONER-APPELLEE,             CASE NO. 8-12-17

    v.

CHAD PREECE,                       O P I N I O N

    RESPONDENT-APPELLANT.

Appeal from Logan County Common Pleas Court
Domestic Relations Division
Trial Court No. CP12-04-0068

Judgment Reversed and Cause Remanded

Date of Decision: June 17, 2013

APPEARANCES:

    *Miranda A. Warren* for Appellant

    *Scott Nelson Barrett* for Appellee

**WILLAMOWSKI, J.**

{¶1} Respondent-Appellant Chad Preece ("Preece") brings this appeal from the judgment of the Common Pleas Court of Logan County, Domestic Relations Division granting a civil protection order ("CPO") to Petitioner-Appellee Lindsay Detrick ("Detrick") preventing Preece from having contact with Detrick, her family, or their daughter Alexandrea. For the reasons set forth below, the judgment is reversed.

{¶2} Preece and Detrick were married on December 31, 2001, and Alexandrea was born on August 27, 2002. On September 25, 2009, the trial court granted a divorce to Preece and Detrick following a contentious divorce which involved a lengthy custody battle. Detrick was named the residential parent by the trial court. On November 8, 2010, Preece filed a motion for shared parenting time. On April 11, 2012, Detrick contacted Children's Services of Logan County and claimed that Preece had made a threat against her life to Alexandrea. She also alleged that Preece was viewing pornography while Alexandrea was in the home, had twisted Alexandrea's arm, and had taken Alexandrea's toys away from her during visits. As a result, she claimed that Alexandrea was suffering emotional harm and was afraid of her father. Detrick also filed a motion for a CPO based upon the above allegations along with alleged prior threats to her safety that Preece allegedly said to Alexandrea. An *ex parte* order of protection for Detrick

and Alexandrea was issued requiring Preece to stay 100 yards away from them and Preece's visitation rights were suspended.

{¶3} A full hearing was held on July 11, 2012. At the hearing, Megan Christenson ("Christenson"), an investigator for Children's Services of Logan County, testified that she had investigated the allegations. She testified that Detrick had told her that Alexandrea had told her that Preece had told Alexandrea that she better learn to drive a car so that she could stop the car when he shot Detrick in the head. Preece's attorney objected to the triple hearsay of the statement. The objection was overruled on the grounds that the statement was not offered to prove the truth of the matter asserted, but merely to show why she conducted the investigation. Christenson also testified that she had interviewed Alexandrea. Christenson testified that Alexandrea had told her that Preece made the statement while they were all sitting in the living room watching television. Christenson then stated that Alexandrea's fear and concern were resulting in her having trouble sleeping and that Alexandrea was wetting the bed. Christenson also testified that she spoke to Detrick and questioned her. She testified that she found Alexandrea and Detrick to be credible. Preece's counsel objected to her testifying as to the credibility of Alexandrea and Detrick, but the objection was overruled.

{¶4} Christenson further testified that she spoke with Preece as well. He denied all of the allegations. He also denied that he even owned a firearm. Due to the nightmares and bedwetting, Christenson found the claim to be substantiated and sent a letter stating that Preece had committed emotional maltreatment. The case was then closed with no further action by the agency. On cross-examination, Christenson admitted that she had been unaware of the lengthy and antagonistic custody battle. She also admitted that she did not really know how long the nightmares and bedwetting had been occurring. Finally, she admitted that some children subjected to custody battles could exhibit similar symptoms.

{¶5} Detrick was the next party to testify. She testified that Alexandrea told her that Preece had told Alexandrea that she needed to learn to stop the car because he was going to drive up beside them and shoot Detrick in the head. Preece's attorney again objected due to hearsay, but it was again admitted as not being offered to prove the truth of the matter asserted, but to lay a foundation for her actions. She claimed that Alexandrea was very afraid of her father. She also testified that the fear manifested itself by Alexandrea having nightmares and wetting the bed. She then recounted to the court an incident where they saw Preece in his vehicle while leaving a store. She claimed that Alexandrea was so terrified that she could barely walk. She testified that Alexandrea kept saying "there's my dad" and that he had seen them. According to Detrick, Alexandrea

had cried for an hour afterward. She interpreted that as Alexandrea being afraid of her father and testified that Alexandrea was terrified of going to her father's home. On cross-examination she admitted that she wanted Preece's visitation reduced, though she was willing to still allow him to see his daughter. She did admit that Alexandrea had had ongoing problems with bedwetting and nightmares since the divorce several years prior.

{¶6} The final witness was Alexandrea. Alexandrea testified that she was a fourth grade student. On direct examination, she was asked whether she had told her mother anything her father had said about her mother. Her answer was no. When asked if her father had ever told her that she should learn to drive a car, her response again was no. Upon questioning by the court, Alexandrea stated that if she could make the decision, she would like equal time with both parents. She testified that she missed her father. She stated that she had seen her father at the store, but did not remember being upset by it. She also testified that she did not have nightmares and was not wetting the bed anymore. She did not testify that any negative statements concerning her mother's safety had been made. She did not testify that she was afraid of her father harming anyone.

{¶7} At the conclusion of the hearing, the magistrate granted the request for the CPO. The order was for six months. Preece filed objections to the magistrate's decision on September 18, 2012. On November 7, 2012, the trial

court overruled the objections and adopted the magistrate's decision. Preece brings this appeal from that decision and raises the following assignments of error.

### First Assignment of Error

**It was an abuse of discretion and against the manifest weight of the evidence when the trial court granted an order of protection to [Detrick] and her minor child.**

### Second Assignment of Error

**The court committed plain error by permitting the admission of hearsay testimony over the objection of [Preece].**

{¶8} Initially, this court notes two things. First, Detrick has chosen to not file a brief in response to Preece's. Pursuant to Appellate Rule 8(C), this court may accept Preece's statement of facts as accurate. Second, the CPO has expired. Although the CPO has expired, the issue is not moot as the existence of such is a factor to consider in any future custody proceedings.

{¶9} In the first assignment of error, Preece claims that the granting of the CPO was against the manifest weight of the evidence. A CPO can be granted when the petitioner shows by a preponderance of the evidence that the petitioner or the petitioner's family members are in danger of domestic violence. R.C. 3113.31(D). Domestic violence has been defined as follows.

> **"Domestic violence" means the occurrence of one or more of the following acts against a family or household member:**
>
> **(a) Attempting to cause or recklessly causing bodily injury;**

**(b) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of [R.C. 2903.211 or 2911.211];**

**(c) Committing any act with respect to a child that would result in the child being an abused child, as defined in [R.C. 2151.031];**

**(d) Committing a sexually oriented offense.**

R.C. 3113.31(A)(1). Generally, judgments regarding CPO's that are supported by competent, credible evidence going to all of the essential elements will not be reversed as being against the manifest weight of the evidence. *Bryan-Wollman v. Domonko*, 115 Ohio St.3d 291, 2007-Ohio-4918.

{¶10} A review of the evidence shows that Detrick did not know if the alleged statement was actually made or not. She testified that she was only afraid if the allegations were true. She also testified that she had previously heard that Preece had threatened her two years prior, but again, the statements were not made to her and she had no knowledge if they were actually made. She did know that Preece had never acted on the alleged first threat. Detrick claimed that Alexandrea was terrified, but Alexandrea testified to the opposite. She stated that she missed her father and wanted to spend time with him and her mother equally. The only testimony to the alleged statement was made by Christenson in the form of double and triple hearsay and Detrick repeating a double hearsay statement. This evidence was not offered for the truth of the matter asserted, but rather to provide

-7-

a background as to why certain actions were taken. Alexandrea, the only witness to have allegedly heard the statement denied that it was made. The supposed physical manifestations of Alexandrea's fear were not limited to the time when the alleged statement was made. Instead, the nightmares and bedwetting were a recurring problem that had been resurfacing periodically whenever Alexandrea was stressed. Most of the stress seemed to be coming from her parents' ongoing custody disputes. Without any evidence offered to prove that the alleged statement by Preece was ever made and the allegation being denied by the person to whom it was allegedly made, there is no evidence to support the conclusion that a CPO was necessary. Thus, the trial court erred in granting the CPO. The first assignment of error is sustained.

{¶11} Having sustained the first assignment of error and found that the trial court's order granting the CPO was against the manifest weight of the evidence, the second assignment of error is moot. Therefore, this court will not address the issue further. App.R. 12(A)(1)(c).

{¶12} The judgment of the Court of Common Pleas of Logan County, Domestic Relations Division is reversed and remanded.

*Judgment Reversed and*
*Cause Remanded*

**PRESTON, P.J. and SHAW, J., concur.**

**/jlr**