******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CHARLES CORNELIUS *v.* COMMISSIONER
OF CORRECTION
(AC 37861)

Sheldon, Prescott and Harper, Js.

*Argued April 12—officially released August 9, 2016*

(Appeal from Superior Court, judicial district of
Tolland, Oliver, J.)

*Eric M. Creizman*, pro hac vice, with whom were
*Brittany B. Paz* and, on the brief, *Norman A. Pattis*
and *Melissa Madrigal*, pro hac vice, for the appellant
(petitioner).

*Steven R. Strom*, assistant attorney general, with
whom were *Kathleen A. Campbell*, certified legal intern,
and, on the brief, *George Jepsen*, attorney general, for
the appellee (respondent).

*Opinion*

PER CURIAM. The petitioner, Charles Cornelius, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus, in which he alleged that the respondent, the Commissioner of Correction, improperly rescinded risk reduction earned credits (RREC) that he had accumulated while he was incarcerated, on the basis of his alleged affiliation with a security risk group (SRG), namely, the Aryan Brotherhood. The respondent argues that the petitioner's claim is moot because he has completed his state sentence, and thus that there is no practical relief that this court can afford him. We agree with the respondent that the petitioner's claim is moot, and thus we dismiss the petitioner's appeal.

The following procedural history is relevant to the petitioner's claim on appeal. On August 10, 2004, the petitioner entered guilty pleas to three charges: one count of attempted manufacture of a bomb in violation of General Statutes §§ 53a-49 and 53-80a; and two counts of possession of an assault weapon in violation of General Statutes § 53-202c. On December 17, 2004, he was sentenced on those charges to a total term of incarceration of twenty-five years, execution suspended after twelve years, followed by ten years of special parole. On January 4, 2011, the petitioner's sentence was modified to ten years and six months incarceration, followed by ten years of special parole.

On November 18, 2004, the petitioner was sentenced to a term of incarceration of eighteen months in the United States District Court for the District of Connecticut, in *United States* v. *Cornelius*, United States District Court, Docket No. 3:04-CR-127 (CFD) (D. Conn. November 18, 2004), after being convicted of importing or manufacturing firearms and fraud with identification documents. These federal charges arose from the same incident that underlay his state charges. His federal sentence was ordered to run consecutively to his state sentence.

On June 20, 2014, the petitioner filed a petition for a writ of habeas corpus, alleging that he was being unlawfully confined because the respondent had improperly rescinded 456 days of good time credit that he had accumulated under the RREC program while serving his state sentence.[1] The petitioner alleged that he was improperly determined to be a member of the prison and street gang known as the Aryan Brotherhood, which had been designated as an SRG. Upon being designated an SRG member, the petitioner was sanctioned by the loss of 456 days of RREC as well as by a prohibition from earning prospective credit.

On January 20, 2015, and February 4, 2015, the habeas court held a two day trial. On March 10, 2015, the habeas court denied the petition for a writ of habeas corpus

on the grounds that the petitioner's right to due process had not been violated by the respondent's rescission of the petitioner's RREC and that the rescission was supported by sufficient evidence. On March 20, 2015, the petitioner filed a petition for certification to appeal to this court, which was granted. On April 8, 2015, the petitioner timely filed this appeal.

On May 20, 2015, the petitioner completed his state term of incarceration and was transferred to the custody of the United States Marshals Service, for delivery to the Federal Bureau of Prisons to begin serving his consecutive eighteen month federal sentence.

The respondent claims that the petitioner's challenge to the rescission of his RREC is moot because he has completed his state sentence and is no longer in state custody. "[A]n actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *Putman* v. *Kennedy*, 279 Conn. 162, 169, 900 A.2d 1256 (2006).

Although the petitioner has completed his state term of incarceration, he argues that the collateral consequences exception to the mootness doctrine applies to his challenge to the rescission of the RREC that he had accumulated while serving his state sentence because if we rule in his favor on that challenge, the extra time he would thereby be found to have served on his state sentence due to the improper rescission could be credited against his current federal sentence. "[U]nder this court's long-standing mootness jurisprudence . . . despite developments during the pendency of an appeal that would otherwise render a claim moot, the court may retain jurisdiction when a litigant shows that there is a reasonable possibility that prejudicial collateral consequences will occur. . . . [T]o invoke successfully the collateral consequences doctrine, the litigant must show that there is a reasonable possibility that prejudicial collateral consequences will occur. Accordingly, the litigant must establish these consequences by more than mere conjecture, but need not demonstrate that these consequences are more probable than not. This standard provides the necessary limitations on justiciability underlying the mootness doctrine itself. Where there is no direct practical relief available from the reversal of the judgment . . . the collateral consequences doctrine acts as a surrogate, calling for a determination whether a decision in the case can afford the litigant some practical relief in the future." (Internal quotation marks omitted.) Id.

Here, the petitioner has failed to produce any evidence tending to establish that there is a reasonable possibility that if his RREC were found to have been

improperly rescinded, the extra time he would thereby be found to have served on his state sentence would be credited against his federal sentence. The only legal authority the petitioner has cited in support of that claim is 18 U.S.C. § 3585 (b),[2] which expressly provides that an inmate shall be afforded credit "for any time he has spent in official detention prior to the date the sentence commences" so long as "that [credit] has not been credited against another sentence."

The federal courts have held that a federal prisoner is not entitled to credit for time spent serving a state sentence, even if the state sentence is later invalidated. See *Meagher* v. *Clark*, 943 F.2d 1277, 1281 (11th Cir. 1991); id., 1280 (citing *Scott* v. *United States*, 434 F.2d 11 [5th Cir. 1970]); see also *Bagley* v. *Rogerson*, 5 F.3d 325, 330 (8th Cir. 1993) (noting that courts have not found a due process violation from the denial of federal credit for time served on a vacated state sentence, even when the service of the state sentence delayed the start of a federal sentence); *Pinaud* v. *James*, 851 F.2d 27, 31–32 (2d Cir. 1988); *Green* v. *United States*, 334 F.2d 733, 736 (1st Cir. 1964) (defendant not entitled to credit against federal sentence for time served on state sentence even though the state sentence was subsequently reversed), cert. denied, 380 U.S. 980, 85 S. Ct. 1345, 14 L. Ed. 2d 274 (1965). Although the foregoing cases involve the application of 18 U.S.C. § 3568, the predecessor statute to § 3585, the enactment of § 3585, as it pertains to the facts at hand, simply codified the longstanding prohibition against affording federal inmates double credit for time they have spent serving sentences imposed by other jurisdictions, which was not explicit in the language of § 3568.

Here, because the 456 days at issue in this case were initially credited against the petitioner's state sentence, the completion of which was necessary in order to trigger the commencement of his consecutive federal sentence, those days cannot be recredited against his federal sentence even if we determine that the state should not have required him to serve them by rescinding his RREC. The petitioner has thus failed to demonstrate that there is a reasonable possibility that a ruling from this court declaring that his RREC had been improperly rescinded would afford him any practical relief. We thus conclude that his claim is moot.

The appeal is dismissed.

[1] General Statutes (Supp. 2016) § 18-98e provides in relevant part: "(a) Notwithstanding any provision of the general statutes, any person sentenced to a term of imprisonment for a crime committed on or after October 1, 1994, and committed to the custody of the Commissioner of Correction on or after said date, except a person sentenced for a violation of section 53a-54a, 53a-54b, 53a-54c, 53a-54d, 53a-55, 53a-55a, 53a-70a, 53a-70c or 53a-100aa, or is a persistent dangerous felony offender or persistent dangerous sexual offender pursuant to section 53a-40, may be eligible to earn risk reduction credit toward a reduction of such person's sentence, in an amount not to exceed five days per month, at the discretion of the Commissioner of Correction for conduct as provided in subsection (b) of this section occurring on or after April 1, 2006.

"(b) An inmate may earn risk reduction credit for adherence to the inmate's offender accountability plan, for participation in eligible programs and activities, and for good conduct and obedience to institutional rules as designated by the commissioner, provided (1) good conduct and obedience to institutional rules alone shall not entitle an inmate to such credit, and (2) the commissioner or the commissioner's designee may, in his or her discretion, cause the loss of all or any portion of such earned risk reduction credit for any act of misconduct or insubordination or refusal to conform to recommended programs or activities or institutional rules occurring at any time during the service of the sentence or for other good cause. If an inmate has not earned sufficient risk reduction credit at the time the commissioner or the commissioner's designee orders the loss of all or a portion of earned credit, such loss shall be deducted from any credit earned by such inmate in the future. . . ."

We note that § 18-98e was amended in 2015; see Public Acts 2015, No. 15-216, § 9; however, the amendment is not relevant to this appeal. For convenience, we refer herein to the revision codified in the 2016 supplement to the General Statutes.

[2] Section 3585 (b) of title 18 of the United States Code provides: "A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—

"(1) as a result of the offense for which the sentence was imposed; or

"(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence."