******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

D. A. *v.* A. C.*
(AC 47507)

Cradle, C. J., and Suarez and DiPentima, Js.

*Syllabus*

The defendant appealed from the trial court's judgment granting the plaintiff's application for relief from abuse and issuing a civil order of protection pursuant to statute (§ 46b-15). The defendant claimed, inter alia, that the court improperly issued a civil order of protection. *Held*:

The trial court properly denied the defendant's motion to dismiss, as the plaintiff produced evidence sufficient to establish a prima facie case, including testimony of the guardian ad litem for the parties' child.

This court could not conclude that the trial court incorrectly applied the law or otherwise abused its discretion in issuing the protective order, as it was unclear from the record on which statutory basis the trial court relied in issuing the protective order, the defendant left unchallenged on appeal two statutory grounds to support the issuance of the protective order, the defendant failed to request an articulation from the trial court, and the defendant rooted his claim on appeal on a superseded revision of § 46b-15 and case law citing to that revision.

Argued June 3—officially released September 16, 2025

*Procedural History*

Application for relief from abuse, brought to the Superior Court in the judicial district of New London at Norwich, where the court, *Shluger, J.*, issued a restraining order ex parte; thereafter, the case was tried to the court, *Shluger, J.*; subsequently, the court, *Shluger, J.*, denied the defendant's motion to dismiss and rendered judgment granting the plaintiff's application for relief from abuse, from which the defendant appealed to this court. *Affirmed.*

---

* In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

*Brandon H. Marley*, with whom was *Drzislav Coric*, for the appellant (defendant).

*Opinion*

DiPENTIMA, J. The defendant, A. C., appeals from the judgment of the trial court granting the application of the plaintiff, D. A., for relief from abuse and the issuing of a civil order of protection pursuant to General Statutes § 46b-15.[1] On appeal, the defendant claims that the court improperly (1) denied his motion to dismiss and (2) issued a civil order of protection. We affirm the judgment of the trial court.

The record reveals the following facts and procedural history. The plaintiff and the defendant, who had a dating relationship that ended in 2019, are the parents of a minor child, E, who was born in 2018. In 2020, the plaintiff initiated a custody proceeding concerning E, which is currently pending. In that action, the plaintiff filed motions for sole physical custody of E, and the parties reached multiple temporary agreements, which were accepted by the court without prejudice. The agreements included the following terms: the parties would not threaten, harass, stalk, or assault each other; a guardian ad litem would be appointed for E; the defendant would undergo a psychological evaluation; the plaintiff would have sole physical custody of E; the parties would have joint legal custody of E; and the defendant would have supervised visitation with E, with pickups and drop-offs conducted at a police station.

On December 2, 2022, pursuant to § 46b-15, the plaintiff filed an application for relief from abuse against the defendant. The court, *Shluger, J.*, issued an ex parte restraining order against the defendant and, on the

---

[1] The plaintiff did not file a brief or otherwise participate in the present appeal. On March 14, 2025, this court ordered that the appeal be considered on the basis of the defendant's brief, the record, and the defendant's oral argument.

scheduled hearing date, the court dismissed the matter by agreement of the parties. On August 7, 2023, the plaintiff filed a second application for relief from abuse against the defendant pursuant to § 46b-15, and the court issued an ex parte restraining order against the defendant, and, on the scheduled hearing date, the court dismissed the matter at the plaintiff's request.

On February 20, 2024, the plaintiff filed the application for relief from abuse that underlies the present appeal. The court issued an ex parte restraining order against the defendant, which was set to expire on March 12, 2024. At a March 12, 2024 evidentiary hearing on the application, the plaintiff and E's guardian ad litem testified.

During the plaintiff's testimony, her counsel asked if she was ever fearful for her safety during the time in which she had dated the defendant, and the defendant's counsel objected, stating that "[a]s far as time frame, there has been several restraining orders filed in the past that have been withdrawn. I think that for time frame purposes, it should be limited." The court responded, "I'll give a little bit of latitude . . . just to set the context, but . . . a restraining order today must be for recent events, so I'll overrule the objection for some background . . . ." The plaintiff then testified that the defendant "was very emotionally abusive to me. He would leave and not come back until random hours. Like at 3 in the morning, sometimes I'd wake up, and he wouldn't be there." She further explained that, in early 2020, when she went to the defendant's house to drop off E for a visit and called out his name to gain his attention while he was fixing the roof on his neighbor's house, the defendant "came down and was screaming at [the plaintiff] in front of [E], and he said, 'If you ever come around my house saying my name like that again, I'm going to put a hammer through

your head.' " When asked if the defendant has threatened to harm her since that incident, the plaintiff responded, "[p]hysically, not so much. It's mostly emotionally and mentally and psychologically that he goes after me." She further testified that "apparently" the defendant owns a gun.

The plaintiff testified that she witnessed the defendant exhibiting "up and down manic behavior" that has been "progressing greatly over the last several years" and manifesting in certain ways such that "sometimes, he'd be really great with [E] and willing to, you know, work together on certain things. And then all of a sudden, out of nowhere, everything flips, and then I would be, essentially, psychologically tormented and emotionally abused by him belittling me, threatening me, challenging me . . . ." She further explained that the defendant "has admitted that he thinks he has bipolar."

The plaintiff further testified, "I am fearful of my life because this man right here has been emotionally and psychologically abusing me for the last six years straight, and he has been abusing my family, showing up at my house uninvited, coming towards me, making me purposely uncomfortable, raising his voice at me in front of my daughter, saying things that are incredibly inappropriate in front of her. I—he has—it seems like almost every time I see him in person he has no ability to control himself and the things he says. I am afraid that he can—like I said before, I'm legitimately scared that he can come to my house and literally kill [me and T, my boyfriend] and take [E]. I'm scared. I wouldn't put it past him to do something like that."

The plaintiff also testified concerning the defendant showing up uninvited at her house. She testified that the defendant exhibited "aggression" in many ways including that "he's come up to my—he drove up to my house before" when he was not invited. She further

testified that she went to the police department to drop off E with the defendant and when he did not show up, she left to go to her own house to drop E off with T. She stated that the defendant, however, "ended up driving up right behind me as I was pulling up at my house, and he blocked me in, so I couldn't get out. I had to, like, pull forward and move my car completely around to get out" and the defendant said, " 'oh, you're not—you can't leave my daughter with that f-ing pedophile,' very loudly in front of our neighbors." The plaintiff noted that the Department of Children and Families conducted an investigation into T, regarding the defendant's allegations that T had sexually abused E, and that T was "fully cleared."

The guardian ad litem for E testified that, in the custody case, there is an order in place that the defendant undergo a psychological evaluation, but that process had not been completed. She further explained that she recommended a psychological evaluation of the defendant in the custody case because he "is, for lack of a better term, obsessed with the sex abuse allegations. And despite that they weren't vetted, that [the Department of Children and Families] didn't find anything, he ended up confronting one of the therapists, and she discharged the child."

Following direct examination of the plaintiff and prior to the testimony of the guardian ad litem, the defendant's counsel made an oral motion to dismiss, arguing that the plaintiff had not met her burden because she had not "shown that she has been subject to a continuous threat of present physical pain or physical injury. She mentions one instance where [the defendant] came to her house to pick up her—his daughter on his access time. There were no threats of violence made at that time. There have been no threats of stalking. Again, threats of violence, the last date she claims was July of 2020. You know, basically, she's claiming

that, you know, he's mean. He yells and screams." The court did not rule at that time on the motion to dismiss, reasoning that it was premature.

At the close of the plaintiff's case-in-chief, the defendant's counsel made a renewed motion to dismiss, which the court denied, stating, "[t]he case of *Margarita* [*O.*] v. *Fernando* [*I.*], [189 Conn. App. 448, 207 A.3d 548, cert. denied, 331 Conn. 930, 207 A.3d 1051, cert. denied,      U.S.     , 140 S. Ct. 72, 205 L. Ed. 2d 130 (2019)], speaks to just that scenario, so I would agree with you that if it weren't for this toxic custody dispute where he is going through a psychological evaluation, where he has only supervised visitation, where there have been allegations upon allegations of [a] gun, there are serious issues of his mental health as well as rage, I think it amplifies what would ordinarily be insufficient evidence."

At the close of the hearing, the court stated, "[t]his case has many indicia of lethality that I've ever seen. You could go down one of those charts, and judges go to these trainings where we get those kinds of charts, and we would be checking almost every box: firearm, mental health problems, toxic custody case, another restraining order/CPO against [T], drop-offs and pick-ups at police department, an order of a psychological evaluation, a threat of violence, albeit dated years ago. And I'll underscore the uncontroverted claims that he is suffering from numerous mental health disorders. He didn't get on the witness stand and say, 'I don't have multiple personality disorder. I'm not narcissistic. I'm not paranoid. I'm not bipolar. I'm not schizophrenic.' That testimony is all I've got. As I indicated earlier, I think the case of [*Margarita O.* v. *Fernando I.*, supra, 189 Conn. App. 448] by the Appellate Court gives the court some latitude under circumstances such as this. . . . I think it stands for the proposition that a toxic

relationship like this can give the court expanded leverage and leeway in fashioning a protective order, a minimal protective order.”

The court issued a restraining order, which expired on March 12, 2025,[2] ordering the defendant to “[s]urrender or transfer all firearms and ammunition” and not to “assault, threaten, abuse, harass, follow, interfere with, or stalk” the plaintiff. This appeal followed.

I

The defendant first claims that the court improperly denied his oral motion to dismiss made at the March 12, 2024 evidentiary hearing. We disagree.

Practice Book § 15-8 provides in relevant part: “If, on the trial of any issue of fact in a civil matter tried to the court, the plaintiff has produced evidence and rested, a defendant may move for judgment of dismissal, and the judicial authority may grant such motion if the plaintiff has failed to make out a prima facie case. . . .”

“The standard for determining whether the plaintiff has made out a prima facie case, under Practice Book § 15-8, is whether the plaintiff put forth sufficient evidence that, *if believed*, would establish a prima facie case, not whether the trier of fact believes it. . . . For the court to grant the motion [for judgment of dismissal pursuant to Practice Book § 15-8], it must be of the opinion that the plaintiff has failed to make out a prima facie case. In testing the sufficiency of the evidence, the court compares the evidence with the allegations of the complaint. . . . In order to establish a prima facie case, the proponent must submit evidence which, if credited, is sufficient to establish the fact or facts which it is adduced to prove. . . . [T]he evidence

---

[2] Although the restraining order expired on March 12, 2025, the defendant’s appeal is not moot due to adverse collateral consequences. See, e.g., *L. D.* v. *G. T.*, 210 Conn. App. 864, 869 n.4, 271 A.3d 674 (2022).

offered by the plaintiff is to be taken as true and interpreted in the light most favorable to [the plaintiff], and every reasonable inference is to be drawn in [the plaintiff's] favor. . . . Whether the plaintiff has established a prima facie case is a question of law, over which our review is plenary." (Emphasis in original; internal quotation marks omitted.) *J. R.* v. *N. K.*, 232 Conn. App. 434, 440, 337 A.3d 14 (2025).

Although much of the plaintiff's testimony contained her conclusory interpretations of the defendant's behavior as painted with broad brush strokes, our plenary review of the trial court's denial of the motion to dismiss is not based on whether we believe the plaintiff's testimony or her general characterizations of the defendant's behavior.[3] Rather, we must accept her testimony as true and consider whether she has satisfied the low bar of setting forth a prima facie case. See General Statutes § 46b-15 (a) (any family member who is victim of domestic violence as defined in General Statutes § 46b-1, by another family member may make application for relief); see also General Statutes § 46b-1 (b) (domestic violence is defined as continuous threat of present physical pain or physical injury, stalking, pattern of threatening, or coercive control). We conclude that the plaintiff's testimony along with that of the guardian ad litem, if believed, was sufficient to establish a prima facie case. Accordingly, we conclude that the trial court properly denied the defendant's motion to dismiss.

## II

The defendant also claims that the court improperly issued a protective order pursuant to § 46b-15. We are not persuaded.

---

[3] Although we do not condone the language used by the trial court in denying the motion to dismiss concerning background factors amplifying insufficient evidence; see footnote 6 of this opinion; because our review is plenary, we are not bound by the trial court's reasons for denying the motion.

"The well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case . . . ." (Internal quotation marks omitted.) *K. S.* v. *R. S.*, 350 Conn. 692, 734–35, 326 A.3d 187 (2024). "The issue of whether the court held the parties to the proper standard of proof is a question of law. When issues in [an] appeal concern questions of law, this court reviews such claims de novo." (Internal quotation marks omitted.) *Kathrynne S.* v. *Swetz*, 191 Conn. App. 850, 860, 216 A.3d 858 (2019).

First, the defendant argues, relying solely on *Putman* v. *Kennedy*, 279 Conn. 162, 900 A.2d 1256 (2006),[4] that, because our Supreme Court "has held that [§] 46b-15 specifically requires a direct causal link between the defendant and the continuous threat of physical harm to the [plaintiff]," the trial court abused its discretion in issuing the protective order because there was no evidence that the plaintiff was subject to a pattern of threatening.

The revision of § 46b-15 (a) that was applicable in *Putman*, provided: "Any family or household member as defined in section 46b-38a who has been subjected

---

[4] In *Putman* v. *Kennedy*, supra, 279 Conn. 162, our Supreme Court held that "it is reasonably possible that adverse collateral consequences of the domestic violence restraining orders may occur, and, therefore, the defendant's appeals are not rendered moot by virtue of the expiration of the orders during the pendency of the appeals." Id., 175. In so holding, the court referenced the then applicable language of § 46b-15, stating that "[t]he threat of reputation harm is particularly significant in this context because domestic violence restraining orders will not issue in the absence of the showing of a threat of violence, specifically a continuous threat of present physical pain or physical injury to the applicant." (Internal quotation marks omitted.) Id., 171.

to a *continuous threat of present physical pain or physical injury* by another family or household member or person in, or has recently been in, a dating relationship who has been subjected to a *continuous threat of present physical pain or physical injury* by the other person in such relationship may make an application to the Superior Court for relief under this section." (Emphasis in original.) *Putman* v. *Kennedy*, supra, 279 Conn. 171 n.10; see also General Statutes (Rev. to 2003) § 46b-15 (a).

The defendant's argument relies solely on whether he had subjected the plaintiff to a continuous threat of present physical pain or physical injury. The revision of § 46b-15 (a) applicable in the present case provides, however, that threatening is not the only statutory basis to support the issuance of a domestic violence protective order. Section 46b-15 (a) has since been amended to provide in relevant part: "Any family . . . member . . . who is the victim of domestic violence, as defined in section 46b-1, by another family . . . member may make an application to the Superior Court for relief under this section. . . ." Section 46b-1 (b) defines "domestic violence" as follows: "(1) A continuous threat of present physical pain or physical injury against a family or household member, as defined in section 46b-38a; (2) stalking, including, but not limited to, stalking as described in section 53a-181d, of such family or household member; (3) a pattern of threatening, including, but not limited to, a pattern of threatening as described in section 53a-62, of such family or household member or a third party that intimidates such family or household member; or (4) coercive control of such family or household member, which is a pattern of behavior that in purpose or effect unreasonably interferes with a person's free will and personal liberty. . . ."

Second, the defendant argues that the court erred in relying on *Margarita O.* because the present case does not involve any oral or written threatening communications. In *Margarita O.*, this court explained that "[i]n *Princess Q. H.* v. *Robert H.*, [150 Conn. App. 105, 116, 89 A.3d 896 (2014)], this court viewed the trial court's decision in light of the surrounding circumstances and context of all the evidence presented to the trial court. . . . In the present case . . . in light of the lengthy, repetitive and hostile nature of the defendant's communications, and the trial court's ability to supplement the written exhibits with its observation of the demeanor of the parties at the hearing, the trial court reasonably could have concluded that the defendant's written threatening communications constituted a pattern of threatening." (Citations omitted; footnotes omitted.) *Margarita O.* v. *Fernando I.*, supra, 189 Conn. App. 464–66.

Third, the defendant contends that "the trial court held that but for the toxic custody dispute, there would have been insufficient evidence to grant the application" and made "conclusory statements . . . devoid of any evidentiary foundation upon which to base said conclusions."[5]

In its oral decision, the court did not specify whether it relied on a continuous threat of present physical pain

[5] The defendant also argues the court improperly shifted to him the burden to prove that he did not have any mental health concerns when it stated, "I'll underscore the uncontroverted claims that he is suffering from numerous mental health disorders. He didn't get on the witness stand and say, 'I don't have multiple personality disorder. I'm not narcissistic. I'm not paranoid. I'm not bipolar. I'm not schizophrenic.' That testimony is all I've got." Contrary to the defendant's contention, the court stated that the plaintiff's testimony concerning the defendant's mental health was undisputed and that it found the plaintiff's testimony credible in that regard. The court is the sole arbiter of credibility; see, e.g., *D. S.* v. *R. S.*, 199 Conn. App. 11, 18, 234 A.3d 1150 (2020); and the court's making of such credibility determinations does not evince an improper shifting of the burden of proof to the defendant.

or physical injury, stalking, a pattern of threatening, or coercive control in issuing the protective order, and it made no findings of fact in this regard. The defendant did not request an articulation; see Practice Book §§ 60-5 and 61-10 (a); and instead has rooted his sufficiency claim on an outdated revision of § 46b-15, addressing the evidence only in the context of the continuous threat of present physical pain or physical injury, and framed his argument concerning the court's reliance on *Margarita O.*, in the context of a pattern of threatening. It is unclear from the record, however, on which statutory basis the court relied in issuing the protective order and the defendant leaves unchallenged on appeal the statutory grounds of stalking and coercive control.

We are left to speculate whether the court improperly relied solely on background factors[6] or whether it concluded in light of all of the surrounding circumstances and the demeanor of the parties at the hearing that evidence existed in the record to support the issuance of the protective order under one of the statutory bases in § 46b-15. We, however, do not presume error on the part of the trial court, rather, error must be demonstrated by an appellant on the basis of an adequate record.[7] See, e.g., *Connecticut Novelty Co.* v. *Graichen*, 233 Conn. App. 843, 848,      A.3d      (2025).

---

[6] We note that nothing in *Margarita O.* or similar cases discussing the examination of background factors eliminates the requirements that, for a trial court to issue a civil restraining order pursuant to § 46b-15, it must determine that the applicant has proven by a preponderance of the evidence; see *Kathrynne S.* v. *Swetz*, supra, 191 Conn. App. 860–62; that the defendant (1) poses a continuous threat of present physical pain or physical injury, (2) has engaged in stalking, (3) has engaged in a pattern of threatening of the plaintiff, or (4) has engaged in coercive control of the plaintiff. See General Statutes § 46b-15 (a); see also General Statutes § 46b-1 (b).

[7] The record in the trial court includes a report prepared by the Judicial Branch family services unit containing the defendant's "risk level." Section 46b-15 (b) provides in relevant part that "at the time of the hearing, the court, in its discretion, may also consider a report prepared by the family services unit of the Judicial Branch, provided the person who prepared such report is available to testify at the hearing and is subject to cross examination. . . ." The court does not allude to it, nor has the defendant raised on appeal

The ambiguous nature of the court's comments and the lack of factual findings in the present case is cast against a backdrop wherein we are presented on appeal with narrowly framed issues that significantly rely on an outdated revision of § 46b-15. Under these circumstances, our resolution of the issues presented to us is guided by the following legal principles. "As a general matter, it is incumbent on the appellant to provide an adequate record for review. . . . To the extent that the court's decision is ambiguous . . . it was [the appellant's] responsibility to seek to have it clarified. . . . [O]ur appellate courts often have recited, in a variety of contexts, that, in the face of an ambiguous or incomplete record, we will presume, *in the absence of an articulation,* a trial court acted correctly, meaning that it undertook a proper analysis of the law and made whatever findings of the facts were necessary." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Doe* v. *Bemer,* 215 Conn. App. 504, 517, 283 A.3d 1074 (2022). Because of the defendant's reliance in the present appeal on a superseded revision of the relevant statute and on case law citing to that superseded revision, compounded by the defendant's failure to request an articulation, we cannot conclude that the court applied the law incorrectly or that it otherwise abused its discretion in issuing the protective order.

The judgment is affirmed.

In this opinion the other judges concurred.

––––––––––––––––––

the inclusion of the report in the record. Therefore, we do not address it. We note, however, the potential due process implications of a trial court's considering such a report in the absence of the person who prepared the report being available to testify at the hearing and subject to cross-examination.