**BARRY, Appellant,**

v.

**BARRY, Appellee.**

[Cite as *Barry v. Barry,* 169 Ohio App.3d 129, 2006-Ohio-5008.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 87211.

Decided Sept. 28, 2006.

Yelsky & Lonardo and Mitchell J. Yelsky, for appellant.

Blaise J. Barry, pro se.

CHRISTINE T. MCMONAGLE, Judge.

{¶ 1} Plaintiff-appellant, Sheila M. Barry ("Wife"), appeals the trial court's judgment entry of divorce. For the reasons set forth below, we affirm the judgment of divorce, but reverse and remand the judgment as to the allocation of parental rights, the division of assets, and the award of attorney fees.

{¶ 2} This case was initiated by the Wife on January 9, 2004, when she filed a complaint for divorce and a request for a temporary restraining order against defendant-appellee, Blaise J. Barry ("Husband"). On the same day she filed her complaint, the Wife also filed a domestic-violence petition; an ex parte civil protection and temporary restraining order was granted on February 9, 2004. The order was modified several times during the pendency of the case.

{¶ 3} On March 16, 2004, the Husband filed his answer, a counterclaim, and a request for a restraining order. The Husband was granted a restraining order that same day.

{¶ 4} On April 20, 2005, the Wife's counsel withdrew from the case and the Wife proceeded unrepresented by counsel for the remainder of the trial court proceedings and the initial proceedings before this court.[1]

{¶ 5} On August 4, 2005, the Wife filed a motion to continue the August 8, 2005 trial date. Prior to the trial commencing on that date, the trial judge denied the Wife's motion. The Wife then requested "a little bit of time to get [her] witnesses * * *." The court denied the Wife's request, and the Wife commenced her case-in-chief. During the direct examination of the Wife's second witness, her brother, it came to the court's attention that Dr. Mark Lovinger, the psychologist who evaluated the parties pursuant to the court's order, and who was to testify on the Husband's behalf, was in the courtroom. The court asked the Wife if she wished for the court to declare a mistrial; the Wife stated that she did. The court declared a mistrial and announced that the new trial would commence the following day, August 9, 2005.

{¶ 6} The next day, August 9, the Wife moved the court to continue the trial; the motion was denied. The Wife called four witnesses on her behalf: her brother, brother-in-law, father, and the children's therapist. The court did not allow the therapist to testify, however, on the grounds that she had a confidential relationship with the children and the Husband had not signed a release for her to testify.

{¶ 7} The Husband, in addition to testifying on his own behalf, called three other witnesses in his case-in-chief: the Wife, the certified appraiser who appraised the marital home, and Dr. Lovinger.

{¶ 8} On September 26, 2005, the trial court issued its judgment entry of divorce. Relevant to this appeal, the court's judgment entry awarded custody of the parties' two minor children to the Husband, awarded attorney fees to the Husband, awarded the Husband 50 percent interest in the Wife's retirement savings and 100 percent interest in his own retirement savings, and found that a marital loan taken by the parties from the Wife's father had an outstanding balance of $38,000 [2] and ordered the Wife responsible for $35,251.08 and the Husband responsible for $2,748.92.

---

1. The Wife states in her brief that her trial counsel withdrew on May 20, 2005. The entry granting withdrawal of the Wife's counsel was file stamped April 20, 2005, however. On December 2, 2005, after the Wife, pro se, had initiated this appeal, appellate counsel filed a notice of appearance with this court and has filed a brief on her behalf.

2. The judgment entry states that the balance was $38,000. On the record, however, the court stated that the balance was $36,000.

{¶ 9} The Wife now appeals the above-mentioned orders from the trial court's judgment entry of divorce, as well as the court's refusal to allow the children's therapist to testify and the denial of her two motions to continue the trial.

{¶ 10} Initially, we note that the standard of review for determinations made in divorce cases is abuse of discretion. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.

{¶ 11} In her first assignment of error, the Wife challenges the trial court's award of custody of the minor children to the Husband. As part of this assignment of error, the Wife contends that the trial court erred by not allowing the children's therapist to testify, and this argument is also the sum and substance of her second assignment of error. The second assignment of error therefore will be addressed along with the first assignment of error.

{¶ 12} The Wife first argues that "the trial court prevented [her], proceeding pro se, from presenting any case whatsoever." We agree, at least in part.

{¶ 13} Initially, we note that in Ohio, pro se litigants "are presumed to have knowledge of the law and of correct legal procedure, and [are] held to the same standard as all other litigants." (Brackets sic.) *Bethke v. 12900 Lake Ave. Condominium Assn.* (Sept. 7, 2000), Cuyahoga App. No. 76774, 2000 WL 1281252, citing *Kilroy v. B.H. Lakeshore Co.* (1996), 111 Ohio App.3d 357, 363, 676 N.E.2d 171.

{¶ 14} Upon review of the two instances when the court sustained the Husband's objections to the Wife's questioning, we find that the trial court abused its discretion in one instance. It appears [3] that the Wife's questions aimed to elicit testimony (from her brother and brother-in-law) about incidents of alleged domestic violence by the Husband toward her. We cannot conceive how domestic violence by one spouse against another could not be relevant in a determination of an allocation of parental rights and responsibilities regarding their children. The fact that the domestic violence was previously litigated within the confines of this case is of no moment; the hearing was not held before the judge who presided over the trial, and the Wife had the right to present the evidence in the context of its effect upon the children.

{¶ 15} We find, however, that the court properly sustained objections when the Wife's witnesses attempted to testify as to hearsay statements; therefore, we find no merit to the Wife's argument that "[i]t is quite likely that [she]

---

3. The Wife did not proffer for the record the testimony she sought to elicit.

had far more relevant testimony regarding parenting issues, that the trial court erroneously rejected."

{¶ 16} The Wife next argues that the trial court erred by not interviewing the children as to their wishes regarding custody.

{¶ 17} R.C. 3109.04(B)(1), governing custody determinations, provides as follows:

{¶ 18} "When making the allocation of the parental rights and responsibilities for the care of the children under this section in an original proceeding or in any proceeding for modification of a prior order of the court making the allocation, the court shall take into account that which would be in the best interest of the children.  In determining the child's best interest for purposes of making its allocation of the parental rights and responsibilities for the care of the child and for purposes of resolving any issues related to the making of that allocation, the court, *in its discretion, may and, upon the request of either party, shall interview in chambers any or all of the involved children regarding their wishes and concerns with respect to the allocation.*"  (Emphasis added.)

{¶ 19} Neither party requested that the trial court interview the children and therefore there was no requirement that an interview be conducted.  The trial court did not abuse its discretion by not, on its own initiative, interviewing the children.

{¶ 20} The Wife next argues, relying on *Rulong v. Rulong*, Cuyahoga App. No. 84953, 2004-Ohio-6919, 2004 WL 2931014, that the trial court erred in precluding the children's therapist from testifying.  In *Rulong*, the parties entered into a shared-parenting plan when they divorced in 1994.  In 2004, the husband filed several motions relative to the custody of the children.  As a result, a guardian ad litem was appointed for the children.  The husband sought release to the guardian of confidential mental health records relative to counseling one of the children received at a health center.  The husband executed a release for the records and compelled his ex-wife, by court order, to also sign a release.  The 16–year–old child to whom the records pertained did not consent to their release.

{¶ 21} After receiving a subpoena for the records, the health center filed a motion for a protective order.  After a hearing on the matter, the trial court denied the center's motion and ordered that the records be released to the guardian.  The center appealed.

{¶ 22} In reversing the trial court, this court held that none of the exceptions to privileged communications set forth in R.C. 2317.02 applied.  In so holding, this court specifically stated:

{¶ 23} "Further, it is of no consequence that the patient in question is a minor and that both natural parents executed releases for disclosure of the information to the Guardian. The plain language of the statute is controlling and creates no exception for the age of the patient or releases executed by parents." *Rulong* at ¶ 14.

{¶ 24} In the case at bar, the trial court refused to permit the child's therapist to testify because the *Husband* had not consented to release the therapist from the privilege.

{¶ 25} The Wife cites the *Rulong* case for the proposition that it is irrelevant whether the parents of a minor child authorize release of privileged information because the privilege belongs to the client, in this case, the parties' children. The Wife did not present any evidence that the children consented to waiving their privilege and therefore her reliance on *Rulong* is misplaced.

{¶ 26} We are, however, persuaded by the Wife's argument that the trial court abused its discretion by awarding custody of the children to the Husband in the face of evidence that he failed to attend a mandatory parenting seminar. Loc.R. 34 of the Court of Common Pleas of Cuyahoga County, Domestic Relations Division, provides as follows:

{¶ 27} "(A) Pre–Decree.—Within thirty (30) days before or after completion of service of process in any action for divorce or legal separation in which there are minor children or within thirty (30) days before or after the filing of a petition for dissolution of marriage in which there are minor children, the parties shall successfully complete a Court approved seminar for divorcing parents.

{¶ 28} " * * *

{¶ 29} " * * *

{¶ 30} "(D) Failure to Attend.—The Court *shall not* conduct a hearing or enter a final order allocating the primary rights and responsibilities for a child, grant shared parenting, modify the allocation of parental rights and responsibilities or modify and/or enforce visitation to or on behalf of any parent who has not completed the Court approved seminar. Notwithstanding the foregoing, no action shall be delayed by the responding or non-moving party's failure or delay in completing the seminar. In such event the Court may elect to conduct a hearing and issue a final order. Upon a party's failure to successfully complete the seminar, the Court may take such action, including but not limited to actions for contempt, as is appropriate." (Emphasis added.)

{¶ 31} The Wife claims that the court abused its discretion by ignoring its own mandatory local rule and awarding sole custody to the Husband (the moving party) when he failed to comply with the requirements of Loc.R. 34 of the Court

of Common Pleas of Cuyahoga County, Domestic Relations Division. We agree. We note in particular that the trial court failed to explain its "dispensation" from a mandatory local rule. Further, the case was pending for almost two years, a period of time that would have afforded the Husband more than adequate opportunity to comply. Accordingly, the trial court abused its discretion in naming the Husband sole residential parent and legal custodian when he failed to comply with Loc.R. 34 of the Court of Common Pleas of Cuyahoga County, Domestic Relations Division.

{¶ 32} Finally in regard to the allocation of parental rights and responsibilities of the parties' children, the Wife argues that Dr. Lovinger's opinion about what was in the best interests of the children was "confusing and contradictory" and that "his recommendations * * * were more calculated at punishing [the Wife], for what [he] perceived to be poor behavior * * *." We take issue with this allegation.

{¶ 33} Dr. Lovinger, who, as previously mentioned, evaluated the parties pursuant to the court's order, explained the rationale behind his conclusion that awarding custody to the Husband would be in the children's best interest as follows:

{¶ 34} "Both children love their parents and both parents, I believe, you know, love their children very much. * * *

{¶ 35} " * * *

{¶ 36} "The problems do not exist with the children and their attachment or relationship to either parent. They love their father. They love their mother. They certainly didn't want to create any scene in front of me and didn't really put down either parent.

{¶ 37} " * * *

{¶ 38} "I think that the problem with the Barry's [sic] is primarily their communication, and I think that a significant problem here is Sheila Barry's inability to give up drama and the ongoing miscommunication and ambiguous communication, distorted communication.

{¶ 39} "I think she has a tendency and it comes out on psychological testing as well, to distort, to embellish, to magnify situations way beyond what is necessary. And this is a great deal of unnecessary drama and provocation of Mr. Barry, which keeps all of this fighting and arguing going."

{¶ 40} Dr. Lovinger opined that the fighting between the parties could have ended a long time ago, but the Wife had a difficult time letting go of the relationship and therefore perpetuated the fighting and drama. Dr. Lovinger initially believed that shared parenting would have been appropriate for the Husband and the Wife, provided their communication with each other improved.

At the time of trial, however, the parties' communication with each other had not improved and was of concern to Dr. Lovinger. On that point, Dr. Lovinger explained:

{¶ 41} "So for me to recommend that they do some form of shared parenting when they can't even communicate via an email about [the] children's doctor's appointment is of great concern to me.

{¶ 42} "So, while I would not want the children to spend less or more time with either parent, I think that I would still be inclined to go with some, you know, shared, in terms of the exact possession of the children with each parent, but I think decision making would have to be, I would recommend that Mr. Barry be making the decisions, because they can't seem to agree on anything.

{¶ 43} " * * *

{¶ 44} "And the reason I say that, is because I think Mr. Barry is much more inclined to invite Mrs. Barry into the decision making than the other way around.

{¶ 45} "Mrs. Barry is not very inclined to communicate with Mr. Barry or invite him into the children's activities, where as I believe Mr. Barry would be much more inclined to do that without drama."

{¶ 46} Based on the aforementioned assessment, Dr. Lovinger was of the opinion that " * * * Mr. Barry is much more able to provide [a] stable environment" for the children.

{¶ 47} Upon review, we do not find that Dr. Lovinger's testimony was "confusing and contradictory" or that "his recommendations * * * were more calculated at punishing [Wife], for what [he] perceived to be poor behavior * * *." The trial court did not abuse its discretion by relying on Dr. Lovinger's testimony. R.C. 3109.04, governing the allocation of parental rights and responsibilities for the care of children in divorce proceedings, provides that in making a custody award between the parents, the court must take into account that which is in the best interest of the children and must consider all relevant factors, including which parent is more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights. Moreover, the record reflects that at one point in time, the Husband filed a motion for shared parenting, and Dr. Lovinger's observations were pertinent and appropriate to that issue.

{¶ 48} However, it should be noted that Dr. Lovinger's testimony indicated that it was his belief that the parents should have equal time with the children, but that goal, in his opinion, should not be accomplished through shared parenting. All of the testimony on the record supported a recommendation of equal time; there is no evidence whatsoever in support of the court's final order of standard visitation. It would appear that all the trial court accepted of Dr. Lovinger's testimony was that the allocation of parental rights and responsibili-

**138**

ties not be in the form of a shared parenting. Without specific findings as to why the recommended equal time was not ordered (that being the *only* evidence upon the record as to the appropriate visitation schedule), this court cannot conclude that the visitation schedule was not an abuse of discretion.

{¶ 49} Accordingly, the Wife's first assignment of error (relative to custody of the children) is sustained in part and overruled in part, and the Wife's second assignment of error (relative to the clinician's testimony) is overruled.

{¶ 50} In her third assignment of error, the Wife contends that the trial court abused its discretion by denying her two motions to continue. We disagree.

{¶ 51} It is axiomatic that the granting of a continuance is within the sound discretion of the trial court. *State v. Unger* (1981), 67 Ohio St.2d 65, 21 O.O.3d 41, 423 N.E.2d 1078. The Wife claims that her motions were based upon her need for additional time to secure counsel. The Wife's counsel withdrew on April 20, 2005. The Wife had more than an adequate amount of time to secure counsel before the trial commenced on August 8, 2005.

{¶ 52} The Wife's third assignment of error is overruled.

{¶ 53} In her fourth, fifth, and sixth assignments of error, the Wife contends that the trial court erred by awarding the Husband attorney fees, failing to award her an interest in the Husband's marital retirement assets, and by offsetting the Husband's marital debt of $19,000 by $16,251.08.

{¶ 54} The prevailing statute governing an award of attorney fees at the time of the parties' divorce was R.C. 3105.18(H).[4] At the time of the divorce, the incomes of the parties were approximately equal.[5] There is no evidence in the record that the Husband would have been prevented from fully litigating issues absent an award of fees. There is no evidence showing a financial need for the

---

4. {¶ a} R.C. 3105.18(H) provided as follows:

{¶ b} "In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, * * * if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees."

{¶ c} It has long been the rule that an award of attorney fees is based on, among other things, necessity, and that necessity is determined by a consideration of the parties' financial situation, including income, assets and expenses. *Barone v. Barone* (Sept. 1, 2000), Lucas App. No. L–98–1328, 2000 WL 1232391; *Cassaro v. Cassaro* (1976), 50 Ohio App.2d 368, 4 O.O.3d 320, 363 N.E.2d 753. In *Goode v. Goode* (1991), 70 Ohio App.3d 125, 134, 590 N.E.2d 439, the court noted that a trial court, in reviewing the record to determine the necessity and reasonableness of attorney fees, may use its own knowledge and experience.

5. Husband's income was $57,000 per year and Wife's $60,000 per year.

fees and no evidence concerning the reasonableness of the fees awarded. Hence, the award of attorney fees in this matter was an abuse of discretion warranting reversal.

{¶ 55} The Wife further argues that the division of marital retirement assets by the court constituted an abuse of discretion and upon this issue we agree. The evidence was uncontroverted that all the retirement assets of the parties were marital. The Husband was awarded 100 percent of the assets in his name, and 50 percent of the assets in the Wife's name. There is no explanation for this unequal division of assets, nor can this court locate in the judgment entry of divorce any offset that might illuminate this unequal division. Accordingly, this division is an abuse of discretion and the matter of the division of the retirement assets is reversed and remanded to the trial court.

{¶ 56} The Wife further argues that there was marital debt that was not divided appropriately. Both parties testified that the Wife's father loaned money to the parties. The Wife's father testified that he loaned the Wife and Husband $46,000. The Husband recalled the debt to be $44,000. The court concluded the debt to be $38,000, with no explanation, and ordered the Husband to pay $2,748.92 of the debt and the Wife to pay the balance. The Wife opines that this unequal division *might* be due to a request made by the Husband that he be given credit for gratuitous payments made by him to creditors for household obligations incurred during the pendency of the divorce.

{¶ 57} The trial court does not offer this explanation in its entry, and even if that were true, voluntary payments are not payments in lieu of support. *Evans v. Brown* (1985), 23 Ohio App.3d 97, 23 OBR 163, 491 N.E.2d 384. However, whether this was the thought process of the court is unknown here; all that appears is that the Husband was to pay seven percent of the debt, and the Wife 93 percent. No findings were made by the court justifying this unequal division; hence, on its face, this allocation constitutes an abuse of discretion.

{¶ 58} Accordingly, the decisions involving the allocation of parental rights and responsibilities, division of marital retirement assets, payment of attorney fees, and allocation of responsibility for marital debt to the Wife's father are hereby reversed, and this matter is remanded for disposition of those issues.

{¶ 59} The judgment is reversed, and the cause is remanded to the Court of Common Pleas, Domestic Relations Division, for further proceedings consistent with this opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

KARPINSKI, P.J., and BLACKMON, J., concur.