**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Cyran v. Cyran,* **Slip Opinion No. 2018-Ohio-24.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-24

CYRAN, APPELLEE, *v*. CYRAN, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cyran v. Cyran,* Slip Opinion No. 2018-Ohio-24.]**

*Domestic relations—Domestic-violence civil protection orders—Appeals—Mootness—Collateral consequences—Absent a showing of legal collateral consequences resulting from an expired domestic-violence civil protection order, an appeal of that order is moot.*

(Nos. 2016-1737 and 2016-1870—Submitted September 13, 2017—Decided January 4, 2018.)

APPEAL from and CERTIFIED by the Court of Appeals for Montgomery County, No. 27009, 2016-Ohio-7323.

_____

**O'NEILL, J.**

{¶ 1} In this case we are asked to determine whether the collateral-consequences exception to mootness applies to an appeal of an expired domestic-

violence civil protection order issued pursuant to R.C. 3113.31, in the absence of any collateral consequences at the time of the appeal. We hold that absent a showing of legal collateral consequences resulting from an expired domestic-violence civil protection order, an appeal of that order is moot.

**Facts and Procedural History**

{¶ 2} Rebecca and Curtis Cyran's marriage was dissolved in 2013, and a shared-parenting decree was put into effect for their three sons. On June 19, 2015, in the Montgomery County Court of Common Pleas, Domestic Relations Division, Rebecca filed a petition for a domestic-violence civil protection order against Curtis under R.C. 3113.31. The incident that led Rebecca to file the petition took place when she was picking up the children from Curtis on June 17, 2015. Rebecca's petition stated that she was approaching the front door of Curtis's house when Curtis rushed out the front door and threw her backward into the bushes. The petition added that Curtis went back inside the house, then came back out and said Rebecca was lucky that he did not shoot her. The domestic-relations court issued an ex parte domestic-violence civil protection order on June 19, 2015. The order made no change to Curtis and Rebecca's parenting schedule and was to remain in effect until June 19, 2016.

{¶ 3} On July 2, 2015, a magistrate conducted a full evidentiary hearing on Rebecca's petition. The magistrate found by a preponderance of the evidence that Rebecca was in danger of or had been a victim of domestic violence as defined in R.C. 3113.31(A) and on August 20, 2015, issued a decision and permanent domestic-violence civil protection order that expired on June 19, 2016. Curtis timely objected to the magistrate's decision, arguing that his statement was a conditional threat and that the protection order was not supported by the manifest weight of the evidence. On January 15, 2016, the trial court dismissed Curtis's objections and adopted the magistrate's order without change, retaining the June 19, 2016 expiration date. Curtis timely appealed. On September 9, 2016, the

appellate court issued a show-cause order asking the parties to explain why the case should not be dismissed as moot because the protection order had expired. Curtis responded that Rebecca had sought the domestic-violence civil protection order only as leverage for herself in future postdivorce proceedings. Curtis also argued that he faced the possibility of collateral consequences with respect to his concealed-firearm permit and his credit report as well as his ability to obtain housing, drive certain vehicles, and obtain future employment. He urged the court to adopt the Eighth District's rule that the possibility of collateral consequences is sufficient to support appellate consideration of an expired domestic-violence civil protection order. *See Wilder v. Perna*, 174 Ohio App.3d 586, 2007-Ohio-6635, 883 N.E.2d 1095 (8th Dist.). Rebecca did not respond to the show-cause order, and she did not seek to extend the protection order.

{¶ 4} On October 14, 2016, the appellate court dismissed the appeal as moot. The court examined each of the potential collateral consequences asserted by Curtis and found no provision of Ohio law imposing sanctions or adverse legal consequences on the basis of an expired protection order. The court acknowledged the Eighth District's *Wilder* decision but declined to apply it. The court determined that it had no authority to speculate whether Curtis would suffer collateral consequences from the expired order in future post-divorce proceedings.

{¶ 5} Curtis appealed to this court, asserting the following two propositions of law:

> Proposition of Law No. 1: The collateral consequences exception to mootness applies to an appeal from an expired protection order when the appellant faces possible collateral consequences that may not be ascertainable at the time of the appeal.
>
> Proposition of Law No. 2: There is a rebuttable presumption that an appeal from an expired protection order is not moot.

**{¶ 6}** On February 22, 2017, this court accepted Curtis's discretionary appeal. 148 Ohio St.3d 1409, 2017-Ohio-573, 69 N.E.3d 750. We also determined that a conflict exists between the Second Appellate District's decision in this case and the Eighth Appellate District's decision in *Wilder* on the following question of law: "Does the collateral consequences exception to mootness apply to an appeal from an expired protective order when the appellant faces possible collateral consequences that may not be ascertainable at the time of the appeal?" Accordingly, we consolidated Curtis's discretionary appeal with the certified-conflict case. 148 Ohio St.3d 1408, 2017-Ohio-573, 69 N.E.3d 749.

**{¶ 7}** We reject both propositions of law and answer the certified question in the negative. We hold that in the absence of demonstrated legal collateral consequences, the collateral-consequences exception to the mootness doctrine does not apply to an expired domestic-violence civil protection order. In reaching this conclusion, however, we express no opinion about whether another exception to the mootness doctrine might apply in a different case. We also decline to establish a rebuttable presumption that an appeal from an expired domestic-violence civil protection order is not moot.

**Analysis**

*Unascertainable Collateral Consequences*

**{¶ 8}** In his first proposition of law, Curtis argues that the collateral-consequences exception to the mootness doctrine applies to an appeal from an expired protection order when the appellant faces possible collateral consequences that may not be ascertainable at the time of the appeal. We disagree.

**{¶ 9}** The role of courts is to decide adversarial legal cases and to issue judgments that can be carried into effect. *Fortner v. Thomas*, 22 Ohio St.2d 13, 14, 257 N.E.2d 371 (1970). Under the mootness doctrine, American courts will not decide cases in which there is no longer an actual legal controversy between the

parties. *In re A.G.*, 139 Ohio St.3d 572, 2014-Ohio-2597, 13 N.E.3d 1146, ¶ 37. Thus, when parties "lack a legally cognizable interest in the outcome," a case becomes moot. *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). This court has recognized the collateral-consequences exception to the mootness doctrine in criminal and traffic cases. *State v. Golston*, 71 Ohio St.3d 224, 227, 643 N.E.2d 109 (1994) (due to the numerous statutory restrictions imposed on convicted felons, an appeal of a felony conviction is not moot even if the entire sentence has been satisfied before the matter is heard on appeal); *Cleveland Hts. v. Lewis*, 129 Ohio St.3d 389, 2011-Ohio-2673, 953 N.E.2d 278, ¶ 23, 31 (a misdemeanant demonstrates a substantial stake in the judgment of conviction even after the sentence has been completed when he contests the charges at trial and, after being convicted, seeks a stay of execution of sentence for the purpose of preventing an intended appeal from becoming moot; in her concurring opinion, Justice Lundberg Stratton pointed out Ohio Revised Code provisions that use a prior misdemeanor charge to enhance the penalty for a future criminal charge or penalty); *State v. Wilson*, 41 Ohio St.2d 236, 325 N.E.2d 236 (1975), syllabus (a misdemeanant must offer evidence from which an inference can be drawn that the misdemeanant suffers some collateral disability in order to maintain the right to appeal a conviction); *In re S.J.K.*, 114 Ohio St.3d 23, 2007-Ohio-2621, 867 N.E.2d 408, ¶ 14, 18 (an appeal of a traffic offense does not become moot after the defendant has paid the fines and costs, because the statutory imposition of points on a person's driver's license constitutes a collateral disability). Thus, under current law, the collateral-consequences exception to mootness applies in cases in which the collateral consequence is imposed as a matter of law. That is not the case here.

{¶ 10} Here, Curtis asserts that the collateral-consequences exception to the mootness doctrine should be applied even when the consequences may not be ascertainable at the time of the appeal. He urges us to adopt the rule in *Wilder*, 174

Ohio App.3d 586, 2007-Ohio-6635, 883 N.E.2d 1095. In *Wilder*, the Eighth District held that an appeal of an expired protection order is not moot, "because it is reasonably possible that adverse collateral consequences may occur." *Id*. at ¶ 16. The court adopted the rationale of the Connecticut Supreme Court that " 'in the sensitive and often explosively litigated context of family dysfunction and dissolution,' " it is reasonably possible that adverse collateral consequences may occur as a result of the expired order. *Id*. at ¶ 15-16, quoting *Putman v. Kennedy*, 279 Conn. 162, 169-174, 900 A.2d 1256 (2006). We disagree.

{¶ 11} Finding a reasonable possibility that a collateral consequence may occur calls for speculation. We understand that divorce, postdivorce, and custody proceedings are sometimes acrimonious. However, "[i]t has become settled judicial responsibility for courts to refrain from giving opinions on abstract propositions and to avoid the imposition by judgment of premature declarations or advice upon potential controversies." *Fortner* at 14. Here, as the Second District explained, there is no provision of Ohio law that imposes a restriction as a result of an expired protection order. Curtis does not demonstrate or argue that he has suffered any consequences. Rather, he argues that the possibility of future collateral consequences should preserve his appeal of the expired order. We are not convinced. Speculation is insufficient to establish a legally cognizable interest for which a court can order relief using the collateral-consequences exception to the mootness doctrine.

*Rebuttable Presumption*

{¶ 12} In his second proposition of law, Curtis asserts that there should be a rebuttable presumption that an appeal from an expired protection order is not moot. We decline to establish such a presumption. As discussed above, it is well established that the role of courts is to " 'decide actual controversies by a judgment which can be carried into effect.' " *Miner v. Witt*, 82 Ohio St. 237, 238, 92 N.E. 21 (1910), quoting *Mills v. Green*, 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293

6

(1895). Further, this court has made it clear that courts have a responsibility to refrain from giving advisory opinions. *Smith v. Leis*, 111 Ohio St.3d 493, 2006-Ohio-6113, 857 N.E.2d 138, ¶ 16.

{¶ 13} Equally clear is that domestic-violence civil protection orders are creatures of statute. R.C. 3113.31 establishes a comprehensive statutory scheme for issuing, modifying, and terminating domestic-violence civil protection orders. The statute vests the court with broad authority to tailor domestic-violence civil protection orders to fit the needs of each particular case. *Felton v. Felton*, 79 Ohio St.3d 34, 37-38, 679 N.E.2d 672 (1997). The statute does not, however, establish a rebuttable presumption that an appeal from an expired order is not moot, and it does not authorize courts to hear appeals of expired orders. Establishing a rebuttable presumption in R.C. 3113.31 that an expired civil protection order is not moot is a matter for the Ohio General Assembly, not for this court. *Morris Plan Bank of Cleveland v. Viona*, 122 Ohio St. 28, 32, 170 N.E. 650 (1930) (statutes should be amended by legislative enactment, not by judicial construction).

### Conclusion

{¶ 14} "The presence of a disagreement, however sharp and acrimonious it may be, is insufficient to create an actual controversy if the parties to the action do not have adverse legal interests." *State ex rel. Barclays Bank, P.L.C. v. Hamilton Cty. Court of Common Pleas*, 74 Ohio St.3d 536, 660 N.E.2d 458 (1996), paragraph one of the syllabus. Accordingly, we hold that in the absence of demonstrated legal collateral consequences, an appeal from an expired domestic-violence civil protection order does not satisfy the collateral-consequences exception to the mootness doctrine. We note, again, that we express no opinion about whether another exception to the mootness doctrine might apply in a different case.

Judgment affirmed.

O'CONNOR, C.J., and O'DONNELL, FRENCH, FISCHER, and DEWINE, JJ., concur.

KENNEDY, J., dissents, with an opinion.

_____

**KENNEDY, J., dissenting.**

{¶ 15} Today, the majority holds that the collateral-consequences exception to the mootness doctrine does not apply to appellate review of a finding of domestic violence contained within a civil protection order ("CPO") issued pursuant to R.C. 3113.31, after a full hearing, when the order expires during the pendency of the appeal. While collateral consequences, to save an appeal from mootness, may not be speculative, *see Pennsylvania v. Mimms*, 434 U.S. 106, 108, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), fn. 3, and must be more than a mere possibility, *see Spencer v. Kemna*, 523 U.S. 1, 14-16, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998), proof of their existence beyond a reasonable doubt is not required. Collateral consequences are instead measured by probability or certainty. *Id.*

{¶ 16} A court of competent jurisdiction is mandated by R.C. 3109.04(F)(2)(c) to consider a "history of, or potential for * * * spouse abuse [or] other domestic violence" in determining whether shared parenting is in the best interest of a child when deciding whether to modify or terminate a decree of shared parenting and shared-parenting plan ("shared-parenting plan"). Therefore, when a respondent subject to a finding of domestic violence in a CPO is also a party to a shared-parenting plan, the legal collateral consequences of a CPO are probable and certain and the party's appeal of the CPO is not moot. Therefore, I would reverse the judgment of the Second District Court of Appeals and remand this matter for appellate review.

{¶ 17} When determining whether to modify or terminate a shared-parenting plan, a trial court is to determine the best interest of the children. *See* R.C. 3109.04(B)(1). As set forth above, one of the factors the court is required to consider when determining whether shared parenting is in the children's best interests is whether there is a history of or potential for domestic violence. *See* R.C.

3109.04(F)(2)(c). A history of or potential for domestic violence may also weigh in the court's determination of other factors the court is required to consider, including "the ability of the parents to cooperate" in making joint decisions regarding their children, R.C. 3109.04(F)(2)(a), and each parent's ability to "encourage the sharing of love, affection, and contact between the child and the other parent," R.C. 3109.04(F)(2)(b).

{¶ 18} In response to the order issued by the Second District requiring him to show cause why his appeal of an expired domestic-violence CPO should not be dismissed as moot, appellant, Curtis Cyran, informed the court that he and appellee, Rebecca Cyran, had three minor children whom they regularly exchanged for parenting time and that legal actions between Curtis and Rebecca were still pending. In support of his argument that collateral consequences resulted from the CPO, Curtis stated that " 'a trial judge making a future custody determination * * * might consider the issuance of a domestic violence restraining order in making that sensitive decision,' " quoting *Wilder v. Perna*, 174 Ohio App.3d 586, 2007-Ohio-6635, 883 N.E.2d 1095. Thereafter, Curtis cited other collateral consequences including potential difficulty obtaining housing and employment and potential impacts on his credit report and concealed-firearm permit.

{¶ 19} In finding the appeal of the CPO moot, the Second District followed the precedent established in *Erbes v. Meyer*, 2d Dist, Montgomery No. 23917, 2011-Ohio-3274, *Baldridge v. Baldridge*, 2d Dist. Darke No. 2010-CA-10, 2011-Ohio-2423, and *Jagow v. Weinstein*, 2d Dist. Montgomery No. 24309, 2011-Ohio-2683. 2016-Ohio-7323, 63 N.E.3d 187, ¶ 5, 7. However, a careful review of those cases demonstrates the danger of equating the wide variety of protection orders available in Ohio with domestic-violence CPOs and of treating the facts of those cases as equivalent to those in this case.

{¶ 20} In *Erbes*, the court issued an antistalking civil protection order ("SCPO"), *id.* at ¶ 1, and in *Jagow*, the court issued a consent-agreement SCPO, *id.*

at ¶ 2.  An SCPO is granted pursuant to R.C. 2903.214, and the underlying allegation in the petition must be that the respondent has engaged in a violation of R.C. 2903.211, the criminal statute that prohibits menacing by stalking.  A finding of domestic violence is not required for a court to issue an SCPO.  While it is possible for an SCPO to be issued against a current or former spouse, *see e.g.*, *Wildi v. Wildi*, 159 Ohio App.3d 568, 2005-Ohio-257, 824 N.E.2d 1011, ¶ 1 (10th Dist.), and *Short v. Walker*, 12th Dist. Preble No. CA2000-08-009, 2001 WL 32808, *1 (Jan. 16, 2001), the facts of *Erbes* and *Jagow* are devoid of any mention that the parties were spouses, were family or household members, were parents to common children, or were subject to a shared-parenting plan.

{¶ 21} While *Baldridge* involved the issuance of a CPO, as in this case, the appellant in that case was not challenging a finding of domestic violence.  The appellant was a wife who had sought and received a CPO and who challenged a provision in the CPO allowing her husband to contact her to discuss their child.  *Id.* at ¶ 2.  Pursuant to R.C. 3113.31(E)(3)(b), however, all parenting provisions contained in a CPO are terminated when a court issues a subsequent parenting order in a divorce proceeding, and subsequent to the issuance of the CPO, the trial court in *Baldridge* had issued a final judgment and decree of divorce containing custody and visitation provisions.   Under  R.C.  3113.31(E)(3)(b),  those  provisions superseded the portion of the CPO that the wife sought to overturn on appeal.

{¶ 22} While the appellate court in this case relied on cases involving protection orders, the majority narrowly focuses on cases with collateral consequences flowing from criminal and traffic offenses in reaching the conclusion that the expiration of the CPO at issue here rendered the appeal moot.  While the collateral-consequences exception to the mootness doctrine developed out of the adverse consequences arising from criminal convictions, *see State v. Golston*, 71 Ohio St.3d 224, 643 N.E.2d 109 (1994), syllabus, our consideration of collateral consequences should not take such a myopic view.

10

**{¶ 23}** In this case, Rebecca and Curtis are subject to a shared-parenting plan, and the domestic-relations court retains jurisdiction to modify or terminate the shared-parenting plan until their children reach the age of majority. *See* R.C. 3109.04(B)(1); *see also Loetz v. Loetz*, 63 Ohio St.2d 1, 2, 406 N.E.2d 1093 (1980). The legislature has granted a trial court the ability to modify or terminate a shared-parenting plan at any time upon motion of the court or either party subject to the plan, R.C. 3109.04(E)(2)(b), and the determination whether to modify or terminate the shared-parenting plan is based on the best interest of the children, R.C. 3109.04(E)(1)(a).

**{¶ 24}** In determining whether shared parenting is in the best interest of the children, the General Assembly has enumerated mandatory factors for a court to consider. *See* R.C. 3109.04(F)(2)(a) through (c). The General Assembly did not assign any relative weight to the factors; therefore, the weight assigned to each factor lies within the trial court's sole discretion.

**{¶ 25}** When the court issued the CPO against Curtis, it made the finding that Curtis committed an act of domestic violence against Rebecca. While the following is not an exhaustive list of cases, Ohio case law abounds with examples of parents whose parental rights and responsibilities have been affected by a prior court's determination that one parent has been found to have committed an act of domestic violence or that a court issued a CPO. *See Heilman v. Heilman*, 3d Dist. Hardin No. 6-12-08, 2012-Ohio-5133, ¶ 29 (trial court factored in CPO in denying father's motion for shared parenting); *Ruble v. Ruble*, 12th Dist. Madison No. CA2010-09-019, 2011-Ohio-3350, ¶ 13 (pursuant to R.C. 3109.04(F)(1)(c), court considered testimony about husband's domestic violence against wife in determining the children's best interest); *Thacker v. Thacker*, 3d Dist. Marion No. 9-10-26, 2010-Ohio-5675, ¶ 51 (trial court considered incidents of domestic violence, including conviction for violating CPO, in denying father's motion for shared parenting); *Barry v. Barry*, 169 Ohio App.3d 129, 2006-Ohio-5008, 862

N.E.2d 143, ¶ 14 (8th Dist.) (domestic violence by one spouse against another is relevant in a determination of an allocation of parental rights and responsibilities); *Clark v. Clark*, 7th Dist. Noble No. 03 NO 308, 2004-Ohio-1577, ¶ 47 (court did not abuse its discretion in considering mother's domestic violence against father when naming father residential parent and legal custodian of minor child); *Dodd v. Dodd*, 6th Dist. Lucas No. L-00-1168, 2001 WL 812244, *1 (July 13, 2001) (court properly considered "volatile relationship of the parents and [father's] violent tendencies" in naming mother residential parent and legal custodian of minor children); *Kelly-Doley v. Doley*, 11th Dist. Lake No. 96-L-217, 1999 WL 262165, *8 (March 12, 1999) (court properly found shared parenting would not be in the best interest of the child due to parents' violent and hostile relationship); *Butzer v. Butzer*, 9th Dist. Wayne No. 97CA0018, 1998 WL 34615, *2 (Jan. 14, 1998) (court properly considered father's conviction for domestic violence against mother in the presence of the children in naming mother primary residential parent); *Alexander v. Oiler*, 2d Dist. Clark No. 96-CA-03, 1997 WL 7166, *4 (Jan. 10, 1997) (father's arrest for domestic violence was a substantial change in circumstances to support a modification of custody); *Clark v. Clark*, 10th Dist. Franklin No. 96APF08-1063, 1997 WL 170298, *5 (April 8, 1997) (trial court did not err in stating that "further domestic violence would be grounds to support a motion to modify parental rights and responsibilities"); *Taylor v. Taylor*, 5th Dist. Richland No. 94 CA 67, 1995 WL 507446, *3 (May 3, 1995) (court did not err in considering incidents of violence between mother and boyfriend in termination of shared-parenting plan).

{¶ 26} In contrast to the Second District's determination in this case, the Eighth District held in *Wilder*, the case certified in conflict with this one, that an appeal from a CPO was not rendered moot by the CPO's expiration. 174 Ohio App.3d 586, 2007-Ohio-6635, 883 N.E.2d 1095, at ¶ 16.

**{¶ 27}** In *Wilder*, the parties had an agreed parenting-time schedule. The mother filed a petition for a CPO against the father on behalf of the child. The trial court issued the CPO, and the father appealed. The CPO expired during the pendency of the appeal. In determining that the appeal of the CPO was not moot, the *Wilder* court relied on *Putman v. Kennedy*, 279 Conn. 162, 173-174, 900 A.2d 1256 (2006), and *Cauwenbergh v. Cauwenbergh*, 11th Dist. Ashtabula No. 2006-A-0008, 2007-Ohio-1070. In *Putman*, the court held that an appeal of a finding of domestic violence in a CPO is not moot, in part because that finding of domestic violence can be used in future proceedings determining parental rights and responsibilities. *Id.* at 1263. In *Cauwenbergh*, the Eleventh District relied on *Putman* in concluding that the appeal of a CPO was not moot. *Cauwenbergh* at ¶ 18.

**{¶ 28}** Two other appellate districts have agreed with the Eighth District Court of Appeals. *See J.T. v. R.T.*, 9th Dist. Medina No. 14CA0061-M, 2015-Ohio-4418, ¶ 6; *Detrick v. Preece*, 3rd Dist. Logan No. 8-12-17, 2013-Ohio-2499, ¶ 8.

**{¶ 29}** And in addition to the Supreme Court of Connecticut in *Putman*, our sister supreme court in the state of Maine has also rejected the mootness of an appeal from a CPO that has expired, because of the required statutory consideration of a domestic-violence protection order in future child-custody actions. *Chretien v. Chretien*, 2017 ME 192, 170 A.3d 260, ¶ 9.

**{¶ 30}** Other state appellate courts have also recognized the collateral consequences resulting from required statutory considerations of a domestic-violence protection order in future child-custody actions and have permitted appeals of expired orders. *See Poland v. Poland*, 2017 Ark. App. 178, 518 S.W.3d 98, 103-104; *Cardoso v. Soldo*, 230 Ariz. 614, 277 P.3d 811, ¶ 10 (Ariz.App.2012); *Pechovnik v. Pechovnik*, 765 N.W.2d 94, 98 (Minn.App.2009); *Schaban-Maurer v. Maurer-Schaban*, 238 S.W.3d 815, 823 (Tex.App.2007); *Smith ex rel. Smith v.*

*Smith*, 145 N.C.App. 434, 437, 549 S.E.2d 912 (2001); *In re H.Q.*, 152 Wis.2d 701, 707-708, 449 N.W.2d 75 (Wis.App.1989).

**{¶ 31}** Society's view of domestic violence and the reach of its ill effects has changed over the past 30 years, and rightfully so. Adrine & Ruden, *Ohio Domestic Violence Law*, Section 1:1, at 10-12 (2016). In response, the Ohio General Assembly has enacted laws exacting harsher criminal penalties for acts of domestic violence and has created a system of civil redress, i.e., civil protection orders, *see Felton v. Felton*, 79 Ohio St.3d 34, 37, 679 N.E.2d 672 (1997). In keeping with the public policies underlying these changes, the Ohio legislature has also enacted statutory guidelines mandating that a trial court, in determining the parental rights and responsibilities of children, must consider the best interests of the children and that the determination of whether shared parenting of children is appropriate must include consideration of whether there is a history or potential for domestic violence. R.C. 3109.04(F)(2)(c).

**{¶ 32}** While the General Assembly rightfully is the "ultimate arbiter of public policy" on these considerations, *State ex rel. Plain Dealer Publishing Co. v. Cleveland*, 106 Ohio St.3d 70, 2005-Ohio-3807, 831 N.E.2d 987, ¶ 54, we should not foreclose a respondent's ability to challenge a finding of domestic violence in a CPO when we know that it is probable or certain that that finding will have an effect on future parenting determinations. While we can hope that a trial court does not consider one factor alone in a vacuum, the determination of the best interest of the child rests within the sole discretion of the trial court. As such, a finding of domestic violence alone can be relied on to deny a parent the " 'fundamental liberty interest' in the care, custody, and management of the child," *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

**{¶ 33}** A respondent who is found to have committed an act of domestic violence and who has been subject to a CPO has a limited window of opportunity

to challenge that finding on appeal. Because a finding of domestic violence can impact a person's fundamental constitutional right to parent their children, we should not deny them their day in court.

{¶ 34} Today, the majority has given a weapon to those who would chose to manipulate parenting proceedings. Just as people race to the courthouse to use an ex parte CPO to get an advantage on residential parenting status before the filing of a divorce or custody action, they will use the majority's opinion to gain an advantage in an ongoing parenting dispute. Based on today's majority opinion, regardless of whether a full-hearing CPO expires or is dismissed, a respondent can never challenge on appeal the finding of domestic violence, and thereby, the respondent is branded forevermore with the taint of being a perpetrator of domestic violence.

{¶ 35} The ever-present likelihood that the finding of domestic violence in a CPO may impact the determination of the best interest of the children and color the court's view of whether a parent is capable of making joint decisions with the other parent regarding their children and encouraging the love and affection between the children and the other parent is the embodiment of a collateral consequence. Because of the commands of the General Assembly in R.C. 3109.04, it is neither "speculative" nor "insufficient to establish a legally cognizable interest for which a court can order relief." Majority opinion at ¶ 11.

{¶ 36} As legal collateral consequences flow from a CPO when the respondent is also a party to a shared-parenting plan, I decline to address the issue of societal collateral consequences.

{¶ 37} Because a court of competent jurisdiction is required as a matter of law pursuant to R.C. 3109.04(F)(2)(c) to consider a "history of, or potential for * * * spouse abuse, [or] other domestic violence" when deciding whether shared parenting is in the best interest of the children, legal collateral consequences as a result of a finding of domestic violence in an expired CPO are probable and certain

in this case. Therefore, based on the facts of this case, when a respondent subject to a finding of domestic violence in a CPO is also a party to a shared-parenting plan, the CPO is not moot. Therefore, I would reverse the judgment of the Second District Court of Appeals and remand this matter for appellate review.

_____

Wright & Schulte, L.L.C., and Stephen D. Behnke, for appellant.

_____