Kennedy, J., dissenting.
{¶ 15} Today, the majority holds that the collateral-consequences exception to the mootness doctrine does not apply to appellate review of a finding of domestic violence contained within a civil protection order ("CPO") issued pursuant to R.C. 3113.31, after a full hearing, when the order expires during the pendency of the appeal. While collateral consequences, to save an appeal from mootness, may not be speculative, see Pennsylvania v. Mimms , 434 U.S. 106, 108, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), fn. 3, and must be more than a mere possibility, see Spencer v. Kemna , 523 U.S. 1, 14-16, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998), proof of their existence beyond a reasonable doubt is not required. Collateral consequences are instead measured by probability or certainty. Id.
{¶ 16} A court of competent jurisdiction is mandated by R.C. 3109.04(F)(2)(c) to consider a "history of, or potential for *492 * * * spouse abuse [or] other domestic violence" in determining whether shared parenting is in the best interest of a child when deciding whether to modify or terminate a decree of shared parenting and shared-parenting plan (collectively, "shared-parenting plan"). Therefore, when a respondent subject to a finding of domestic violence in a CPO is also a party to a shared-parenting plan, the legal collateral consequences of a CPO are probable and certain and the party's appeal of the CPO is not moot. Therefore, I would reverse the judgment of the Second District Court of Appeals and remand this matter for appellate review.
{¶ 17} When determining whether to modify or terminate a shared-parenting plan, a trial court is to determine the best interest of the children. See R.C. 3109.04(B)(1). As set forth above, one of the factors the court is required to consider when determining whether shared parenting is in the children's best interest is whether there is a history of or potential for domestic violence. See R.C. 3109.04(F)(2)(c). A history of or potential for domestic violence may also weigh in the court's determination of other factors the court is required to *490 consider, including "the ability of the parents to cooperate" in making joint decisions regarding their children, R.C. 3109.04(F)(2)(a), and each parent's ability to "encourage the sharing of love, affection, and contact between the child and the other parent," R.C. 3109.04(F)(2)(b).
{¶ 18} In response to the order issued by the Second District requiring him to show cause why his appeal of an expired domestic-violence CPO should not be dismissed as moot, appellant, Curtis Cyran, informed the court that he and appellee, Rebecca Cyran, had three minor children whom they regularly exchanged for parenting time and that legal actions between Curtis and Rebecca were still pending. In support of his argument that collateral consequences resulted from the CPO, Curtis stated that " 'a trial judge making a future custody determination * * * might consider the issuance of a domestic violence restraining order in making that sensitive decision,' " quoting Wilder v. Perna , 174 Ohio App.3d 586, 2007-Ohio-6635, 883 N.E.2d 1095 (8th Dist.). Thereafter, Curtis cited other collateral consequences, including potential difficulty obtaining housing and employment and potential effects on his credit report and concealed-firearm permit.
{¶ 19} In finding the appeal of the CPO moot, the Second District followed the precedent established in Erbes v. Meyer , 2d Dist. Montgomery No. 23917, 2011-Ohio-3274, 2011 WL 2586349, Baldridge v. Baldridge , 2d Dist. Darke No. 2010-CA-10, 2011-Ohio-2423, 2011 WL 1936056, and Jagow v. Weinstein , 2d Dist. Montgomery No. 24309, 2011-Ohio-2683, 2011 WL 2174995. 2016-Ohio-7323, 63 N.E.3d 187, ¶ 5, 7. However, a careful review of those cases demonstrates the danger of equating the wide variety of protection orders available in Ohio with domestic-violence CPOs and of treating the facts of those cases as equivalent to those in this case.
{¶ 20} In Erbes , the court issued an antistalking civil protection order ("SCPO"), id. at ¶ 1, and in Jagow , the court issued a consent-agreement SCPO, id. at ¶ 2. An SCPO is granted pursuant to R.C. 2903.214, and the underlying allegation in the petition must be that the respondent has engaged in a violation of R.C. 2903.211, the criminal statute that prohibits menacing by stalking. A finding of domestic violence is not required for a court to issue an SCPO. While it is possible for an SCPO to be issued against a current or former spouse, see, e.g. , *493 Wildi v. Wildi , 159 Ohio App.3d 568, 2005-Ohio-257, 824 N.E.2d 1011, ¶ 1 (10th Dist.) ; Short v. Walker , 12th Dist. Preble No. CA2000-08-009, 2001 WL 32808, *1 (Jan. 16, 2001), the facts of Erbes and Jagow are devoid of any mention that the parties were spouses, were family or household members, were parents to common children, or were subject to a shared-parenting plan.
{¶ 21} While Baldridge involved the issuance of a CPO, as in this case, the appellant in that case was not challenging a finding of domestic violence. The *491 appellant was a wife who had sought and received a CPO and who challenged a provision in the CPO allowing her husband to contact her to discuss their child. Id. at ¶ 2. Pursuant to R.C. 3113.31(E)(3)(b), however, all parenting provisions contained in a CPO are terminated when a court issues a subsequent parenting order in a divorce proceeding, and subsequent to the issuance of the CPO, the trial court in Baldridge had issued a final judgment and decree of divorce containing custody and visitation provisions. Under R.C. 3113.31(E)(3)(b), those provisions superseded the portion of the CPO that the wife sought to overturn on appeal.
{¶ 22} While the appellate court in this case relied on cases involving protection orders, the majority narrowly focuses on cases with collateral consequences flowing from criminal and traffic offenses in reaching the conclusion that the expiration of the CPO at issue here rendered the appeal moot. While the collateral-consequences exception to the mootness doctrine developed out of the adverse consequences arising from criminal convictions, see State v. Golston , 71 Ohio St.3d 224, 643 N.E.2d 109 (1994), syllabus, our consideration of collateral consequences should not take such a myopic view.
{¶ 23} In this case, Rebecca and Curtis are subject to a shared-parenting plan and the domestic-relations court retains jurisdiction to modify or terminate the shared-parenting plan until their children reach the age of majority. See R.C. 3109.04(B)(1) ; see also Loetz v. Loetz , 63 Ohio St.2d 1, 2, 406 N.E.2d 1093 (1980). The legislature has granted a trial court the ability to modify or terminate a shared-parenting plan at any time upon motion of the court or either party subject to the plan, R.C. 3109.04(E)(2)(b), and the determination whether to modify or terminate the shared-parenting plan is based on the best interest of the children, R.C. 3109.04(E)(1)(a).
{¶ 24} In determining whether shared parenting is in the best interest of the children, the General Assembly has enumerated mandatory factors for a trial court to consider. See R.C. 3109.04(F)(2)(a) through (c). The General Assembly did not assign any relative weight to the factors; therefore, the weight assigned to each factor lies within the trial court's sole discretion.
{¶ 25} When the court issued the CPO against Curtis, it made the finding that Curtis committed an act of domestic violence against Rebecca. While the following is not an exhaustive list of cases, Ohio case law abounds with examples of parents whose parental rights and responsibilities have been affected by a prior court's determination that one parent has been found to have committed an act of domestic violence or that a court issued a CPO. See Heilman v. Heilman , 3d Dist. Hardin No. 6-12-08, 2012-Ohio-5133, 2012 WL 5397596, ¶ 29 (trial court factored in CPO in denying father's motion for shared parenting);
*492 Ruble v. Ruble , 12th Dist. Madison No. CA2010-09-019, 2011-Ohio-3350, 2011 WL 2611797, ¶ 13 (pursuant to R.C. 3109.04(F)(1)(c), court considered testimony about husband's domestic violence against wife in determining the children's best interest);
*494 Thacker v. Thacker , 3d Dist. Marion No. 9-10-26, 2010-Ohio-5675, 2010 WL 4792400, ¶ 51 (trial court considered incidents of domestic violence, including conviction for violating CPO, in denying father's motion for shared parenting); Barry v. Barry , 169 Ohio App.3d 129, 2006-Ohio-5008, 862 N.E.2d 143, ¶ 14 (8th Dist.) (domestic violence by one spouse against another is relevant in a determination of an allocation of parental rights and responsibilities); Clark v. Clark , 7th Dist. Noble No. 03 NO 308, 2004-Ohio-1577, 2004 WL 615708, ¶ 47 (court did not abuse its discretion in considering mother's domestic violence against father when naming father residential parent and legal custodian of minor child); Dodd v. Dodd , 6th Dist. Lucas No. L-00-1168, 2001 WL 812244, *1 (July 13, 2001) (court properly considered "volatile relationship of the parents and [father's] violent tendencies" in naming mother residential parent and legal custodian of minor children); Kelly-Doley v. Doley , 11th Dist. Lake No. 96-L-217, 1999 WL 262165, *8 (Mar. 12, 1999) (court properly found shared parenting would not be in the best interest of the child due to parents' violent and hostile relationship); Butzer v. Butzer , 9th Dist. Wayne No. 97CA0018, 1998 WL 34615, *2 (Jan. 14, 1998) (court properly considered father's conviction for domestic violence against mother in the presence of the children in naming mother primary residential parent); Alexander v. Oiler , 2d Dist. Clark No. 96-CA-03, 1997 WL 7166, *4 (Jan. 10, 1997) (father's arrest for domestic violence was a substantial change in circumstances to support a modification of custody); Clark v. Clark , 10th Dist. Franklin No. 96APF08-1063, 1997 WL 170298, *5 (Apr. 8, 1997) (trial court did not err in stating that "further domestic violence would be grounds to support a motion to modify parental rights and responsibilities"); Taylor v. Taylor , 5th Dist. Richland No. 94 CA 67, 1995 WL 507446, *3 (May 3, 1995) (court did not err in considering incidents of violence between mother and boyfriend in termination of shared-parenting plan).
{¶ 26} In contrast to the Second District's determination in this case, the Eighth District held in Wilder , the case certified in conflict with this one, that an appeal from a CPO was not rendered moot by the CPO's expiration. 174 Ohio App.3d 586, 2007-Ohio-6635, 883 N.E.2d 1095, at ¶ 16.
{¶ 27} In Wilder , the parties had an agreed parenting-time schedule. The mother filed a petition for a CPO against the father on behalf of the child. The trial court issued the CPO, and the father appealed. The CPO expired during the pendency of the appeal. In determining that the appeal of the CPO was not moot, the Wilder court relied on Putman v. Kennedy , 279 Conn. 162, 173-174, 900 A.2d 1256 (2006), and Cauwenbergh v. Cauwenbergh , 11th Dist. Ashtabula No. 2006-A-0008, 2007-Ohio-1070, 2007 WL 726951. In Putman , the court held that an appeal of a finding of domestic violence in a CPO is not moot, in part because that *493 finding of domestic violence can be used in future proceedings determining parental rights and responsibilities. Putman at 172. In Cauwenbergh , the Eleventh District relied on Putman in concluding that the appeal of a CPO was not moot. Cauwenbergh at ¶ 18.
{¶ 28} Two other appellate districts have agreed with the Eighth District Court of Appeals. See J.T. v. R.T. , 9th Dist. Medina No. 14CA0061-M, 2015-Ohio-4418, 2015 WL 6449294, ¶ 6 ; Detrick v. Preece , 3rd Dist. Logan No. 8-12-17, 2013-Ohio-2499, 2013 WL 3089090, ¶ 8.
{¶ 29} And in addition to the Supreme Court of Connecticut in Putman , our sister supreme court in the state of Maine has also rejected the mootness of an appeal *495 from a CPO that has expired, because of the required statutory consideration of a domestic-violence protection order in future child-custody actions. Chretien v. Chretien , 2017 ME 192, 170 A.3d 260, ¶ 9.
{¶ 30} Other state appellate courts have also recognized the collateral consequences resulting from required statutory considerations of a domestic-violence protection order in future child-custody actions and have permitted appeals of expired orders. See Poland v. Poland , 2017 Ark.App. 178, 518 S.W.3d 98, 103-104 ; Cardoso v. Soldo , 230 Ariz. 614, 277 P.3d 811, ¶ 10 (App.2012) ; Pechovnik v. Pechovnik , 765 N.W.2d 94, 98 (Minn.App.2009) ; Schaban-Maurer v. Maurer-Schaban , 238 S.W.3d 815, 823 (Tex.App.2007) ; Smith ex rel. Smith v. Smith , 145 N.C.App. 434, 437, 549 S.E.2d 912 (2001) ; In re H.Q. , 152 Wis.2d 701, 707-708, 449 N.W.2d 75 (App.1989).
{¶ 31} Society's view of domestic violence and the reach of its ill effects has changed over the past 30 years, and rightfully so. Adrine & Ruden, Ohio Domestic Violence Law , Section 1:1, at 10-12 (2016). In response, the Ohio General Assembly has enacted laws exacting harsher criminal penalties for acts of domestic violence and has created a system of civil redress, i.e., civil protection orders, see Felton v. Felton , 79 Ohio St.3d 34, 37, 679 N.E.2d 672 (1997). In keeping with the public policies underlying these changes, the Ohio legislature has also enacted statutory guidelines mandating that a trial court, in determining the parental rights and responsibilities for the care of children, must consider the best interest of the children and that the determination whether shared parenting of children is appropriate must include consideration whether there is a history or potential for domestic violence. R.C. 3109.04(F)(2)(c).
{¶ 32} While the General Assembly rightfully is the "ultimate arbiter of public policy" on these considerations, State ex rel. Plain Dealer Publishing Co. v. Cleveland , 106 Ohio St.3d 70, 2005-Ohio-3807, 831 N.E.2d 987, ¶ 54, we should not foreclose a respondent's ability to challenge a finding of domestic violence in a CPO when we know that it is probable or certain that that finding will have an effect on future parenting determinations. While we can hope that a trial court *494 does not consider one factor alone in a vacuum, the determination of the best interest of the child rests within the sole discretion of the trial court. As such, a finding of domestic violence alone can be relied on to deny a parent the " 'fundamental liberty interest' in the care, custody, and management of the child," In re Murray , 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting Santosky v. Kramer , 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).
{¶ 33} A respondent who is found to have committed an act of domestic violence and who has been subject to a CPO has a limited window of opportunity to challenge that finding on appeal. Because a finding of domestic violence can impact a person's fundamental constitutional right to parent their children, we should not deny them their day in court.
{¶ 34} Today, the majority has given a weapon to those who would chose to manipulate parenting proceedings. Just as people race to the courthouse to use an ex parte CPO to get an advantage on residential-parent status before the filing of a divorce or custody action, they will use the majority's opinion to gain an advantage in an ongoing parenting dispute. Based on today's majority opinion, regardless of whether a full-hearing CPO expires or is dismissed, a respondent can never challenge on appeal the finding of domestic violence, and thereby, the respondent is branded forevermore with the taint of being a perpetrator of domestic violence.
*496 {¶ 35} The ever-present likelihood that the finding of domestic violence in a CPO may affect the determination of the best interest of the children and color the court's view of whether a parent is capable of making joint decisions with the other parent regarding their children and encouraging the love and affection between the children and the other parent is the embodiment of a collateral consequence. Because of the commands of the General Assembly in R.C. 3109.04, it is neither "specula[tive]" nor "insufficient to establish a legally cognizable interest for which a court can order relief," majority opinion at ¶ 11.
{¶ 36} As legal collateral consequences flow from a CPO when the respondent is also a party to a shared-parenting plan, I decline to address the issue of societal collateral consequences.
{¶ 37} Because a court of competent jurisdiction is required as a matter of law pursuant to R.C. 3109.04(F)(2)(c) to consider a "history of, or potential for * * * spouse abuse [or] other domestic violence" when deciding whether shared parenting is in the best interest of the children, legal collateral consequences as a result of a finding of domestic violence in an expired CPO are probable and certain in this case. Therefore, based on the facts of this case, when a respondent subject to a finding of domestic violence in a CPO is also a party to a shared-parenting plan, the appeal of the CPO is not moot. Therefore, I would reverse the judgment of *495 the Second District Court of Appeals and remand this matter for appellate review.